# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Jun 12 2014, 10:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BILLY YOUNG, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1310-CR-868 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant Hawkins, Judge
Cause No. 49G05-1209-MR-5281

**June 12, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Billy Young appeals his conviction for attempted aggravated battery, raising the following issues for our review: (1) whether it was error to enter a conviction against Young of attempted aggravated battery as a lesser included offense of murder; and (2) whether the evidence was sufficient to support Young's conviction. Concluding the charging information did not give Young sufficient notice of the crime of which he was convicted, we reverse.[1]

## Facts and Procedural History

Tiara Robertson previously dated Brandon Lee and was friends with his sister, Latoya Lee. Tiara and Brandon ended their relationship, and in September 2012, Tiara was living with her new boyfriend, Ramon Gude.

On September 5, 2012, Latoya came to Tiara and Ramon's apartment sometime around 9:30 p.m. Latoya and Tiara began arguing. Ramon confronted Latoya and hit her. Latoya became even angrier and left after telling Tiara and Ramon that she would be back.

Two days later, on September 7, 2012, Ramon and Tiara were home with their children.[2] That evening, Latoya arrived at their apartment, accompanied by Young and Marquise Lee (Latoya's cousin). While Ramon was standing in front of the apartment building, he called Tiara on the phone and told her "they are outside." Transcript at 35. Tiara ran outside to find Ramon and Marquise fighting. Marquise was getting the better of Ramon, and Ramon was attempting to retreat into his apartment. Tiara grabbed Ramon and

---

[1] Because we find Young's first issue dispositive, we need not determine whether there was sufficient evidence to prove Young committed attempted aggravated battery.

2

pulled him inside, but Marquise and Young followed them into the apartment, along with a third, unknown man whom Tiara had not previously noticed. Ramon stood in the corner near the door and attempted to shield himself with his arms. Young handed an unloaded gun and a magazine to Marquise. Marquise played with the gun and magazine, but he never loaded the gun. After handing the gun to Marquise, Young began trying to punch Ramon over Tiara, who was standing in front of Ramon. The third, unidentified man then shot Ramon. When the shots were fired, Young stopped trying to punch Ramon, and both Young and Marquise seemed surprised. After the shots were fired, all three men fled the apartment. Ramon suffered multiple gunshot wounds and died as a result.

On September 24, 2012, Young, Marquise, and Latoya were charged with murder, a felony, and conspiracy to commit murder, a Class A felony.[3] The defendants waived their right to a jury trial and were tried as codefendants. A two-day bench trial was held September 9-10, 2013. After all evidence was presented, a motion was made pursuant to Indiana Trial Rule 41(B), and the trial court purported to dismiss the charges of murder and conspiracy to commit murder but stated it would "leave all the possible batteries on the table" as lesser included offenses. Tr. at 268. When determining that proof was insufficient to support charges of murder and conspiracy to commit murder, the trial court said the "State ha[d] proven beyond a reasonable doubt . . . that [Latoya] was going to arrange for a beat down. And she was going to take some friends and family over there and they were going to

_____

[2] Ramon and Tiara each had two children from previous relationships.

[3] At the time of trial, the police still had not identified the individual who shot and killed Ramon.

3

pound on Ramon." Id. The State and attorneys for each codefendant presented argument regarding the possibility of conviction on various levels of battery. The trial court then announced its decision to find each codefendant guilty of Class B felony attempted aggravated battery. Prior to announcing the verdict, the trial court stated:

> [T]here has not been enough evidence to connect the murderer and his intent with the defendants here. I'm satisfied the State has proven beyond a reasonable doubt they went over there to beat [Ramon] until he couldn't stand anymore. . . . I think technically the verdict of guilty has to be attempted aggravated battery as to each defendant as a lesser to count 1 [murder].

Id. at 283-84. Young was sentenced to fifteen years imprisonment. This appeal followed.[4]

### Discussion and Decision

Young argues that it was error for the trial court to convict him of attempted aggravated battery as a lesser included offense of murder. Young specifically takes issue with the fact that the "manner and means" used to carry out the charged murder were not the "manner and means" the trial court relied on in entering a conviction against Young. Brief of Appellant at 6. In essence, Young argues that the charging information did not give him fair notice of the crime of which he was convicted. Under the circumstances presented in this case, including statements made by the trial court in conjunction with its dismissal of the murder charge, we agree.

The charging information against Young alleged Count I, murder, as follows:

Latoya Lee, Marquise Lee and Billy Young, on or about September 7, 2012,

---

[4] We note that Marquise Lee and Latoya Lee, who received the same conviction and sentence as Young, each appealed separately. See Lee v. State, 49A02-1310-CR-869 (Ind. Ct. App. May 27, 2014) and Lee v. State, 49A02-1310-CR-00867 (Ind. Ct. App. June 10, 2014). The notice issue discussed in this case was not raised by the parties in either of those cases.

4

did knowingly kill another human being, namely:  Ramon Gude, by shooting a deadly weapon, that is:  a gun, at and against the person of Ramon Gude, thereby inflicting mortal injuries upon Ramon Gude, causing Ramon Gude to die.

Appellant's Appendix at 31.  The trial court opted to dismiss this count after concluding the State failed to prove beyond a reasonable doubt that Young and the other codefendants were connected with the murderer or had the requisite intent to kill.  Instead, the court convicted the codefendants based on evidence that they went to the apartment with the intent to "pound on Ramon" and found Young guilty of attempted aggravated battery.  Put simply, Young's conviction was founded on evidence completely different from the facts alleged in the charging information.

This case presents us with unusual circumstances both substantively and procedurally.  Issues involving lesser included offenses often arise when the dispute involves a request for a jury instruction; however, this case was tried before the bench, and the possibility of conviction of a lesser included offense was proposed unilaterally by the trial court.[5] Ordinarily, we use the test discussed in Wright v. State, 658 N.E.2d 563, 566-67 (Ind. 1995) to determine whether it is proper to give an instruction stating one offense may be considered a lesser included offense of the charged crime.   First, the court determines if an offense is "inherently included" in the charged crime by "compar[ing] the statute defining the crime charged with the statute defining the alleged lesser included offense." Id. at 566.  An offense

_____

[5] We recognize that no explicit objection was made after the court announced its decision to find the defendants guilty of attempted aggravated battery, although the absence of proposed jury instructions and the manner in which the trial court introduced the possibility of lesser included offenses did not present a clear opportunity for a timely objection.  That said, the State does not claim Young's first issue has been forfeited, and we would find fundamental error resulting from the unusual circumstances in this case.

5

is inherently included if the alleged lesser included offense "may be established by proof of the same material elements or less than all the material elements defining the crime charged or . . . the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required . . . ." Id. (citations and quotation marks omitted). If the alleged lesser included offense is not inherently included, then the court will determine whether it is "factually included" in the crime charged by comparing the statute defining the alleged lesser included offense with the charging information. Id. at 567. "If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged . . . ." Id. (emphasis omitted).[6]

At first blush, it would seem attempted aggravated battery could be an inherently lesser included offense of murder.[7] Compare Ind. Code § 35-42-2-1.5 (aggravated battery) and Ind. Code § 35-41-5-1 (attempt) with Ind. Code § 35-42-1-1 (murder). That said, we believe, under the circumstances of this particular case, a conviction of attempted aggravated battery as a lesser included offense is not appropriate. Although not explicit in the Wright test, it stands to reason that the facts alleged in the charging information must be the same

---

[6] The test in Wright contains a third step, which is necessary only when the court determines that an alleged lesser included offense is either inherently or factually included in the charged crime. 658 N.E.2d at 567. That step is unnecessary to our discussion here.

[7] We note, however, that case law on that point is somewhat conflicting. Compare Ratcliffe v. State, 553 N.E.2d 1208, 1212 (Ind. 1990) ("Battery is not inherently a lesser included offense of murder.") with Salone v. State, 652 N.E.2d 552, 558 (Ind. Ct. App. 1995) (holding battery is an inherently lesser included offense of aggravated battery), trans. denied, and Meriweather v. State, 659 N.E.2d 133, 141-42 (Ind. Ct. App. 1995) (holding attempted aggravated battery is an inherently lesser included offense of attempted murder), trans. denied, abrogated in part on other grounds by Wright, 658 N.E.2d at 570.

6

facts that form the basis for a lesser included offense. The trial court found the alleged facts underlying Young's murder charge were not proved beyond a reasonable doubt, and his conviction for attempted aggravated battery was based on other evidence presented at trial. Thus, Young's attempted aggravated battery conviction is not a lesser included offense of the murder charge.

The State recognizes Young's argument that he was "convicted of an act that was not charged," and suggests that it is "akin to a variance argument." Brief of Appellee at 9. We are hesitant to classify Young's argument as one of variance, because Young was not simply convicted of murder by using a knife instead of a gun, for example; rather, he was convicted of a crime wholly distinct from the one with which he was charged. We see this case not as a question of variance but as one involving a failure of proof. See Addis v. State, 404 N.E.2d 59, 62-64 (Ind. Ct. App. 1980); cf. also Madison v. State, 234 Ind. 517, 548-49, 130 N.E.2d 35, 49 (1955) (Arterburn, J., concurring, joined by three other justices) (identifying distinction between a "variance" and a "total failure of proof of an essential element of crime charged"). "[A] failure of proof requires a reversal while a variance is not always fatal." Coates v. State, 249 Ind. 357, 359, 229 N.E.2d 640, 641 (1967), superseded by statute on other grounds.

A defendant's right to notice of the charges against him is safeguarded by both our federal and state constitutions. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."

Cole v. Arkansas, 333 U.S. 196, 201 (1948). "To permit a 'conviction upon a charge not made would be sheer denial of due process.'" Addis, 404 N.E.2d at 63 (quoting Thompson v. City of Louisville, 362 U.S. 199, 206 (1960)). This is based, in part, on the concept that a defendant is "entitled to limit his defense to those matters with which he stands accused." Garcia v. State, 433 N.E.2d 1207, 1209 (Ind. Ct. App. 1982). Young was denied the ability to limit his defense when he was convicted of a crime despite the trier of fact's belief that a connection between Young and the charged murder was not proved beyond a reasonable doubt. Because Young was convicted of a crime entirely different from the one with which he was charged, his conviction cannot stand.

The State argues that any "variance" in the charging information is not fatal because Young was not misled by the charging information and was able to prepare a defense. The State maintains this is true because the murder charge mentions a shooting and Young attempted to shoot Ramon but was merely preempted by the third, unknown individual. However, the State's version of the evidence contradicts the trial court's stated view of the evidence. When dismissing the charges of murder and conspiracy to commit murder, and again when announcing the verdict, the trial court said it believed the State had proved beyond a reasonable doubt that Young and the other defendants planned to "pound on" or "beat" Ramon, not to shoot him. Thus, the State's reliance on proof of a "planned shooting" is unpersuasive in light of the trier of fact's apparent belief that such a plan was not proven. Br. of Appellee at 9-10.

Finally, to the extent that Young's conviction could be viewed as a sua sponte

8

amendment to the charging information by the trial court, we conclude that such an amendment would be error. Amendments to charging information are governed by Indiana Code section 35-34-1-5, which does not allow amendments of substance after the commencement of trial. The sort of amendment required to convict Young of attempted aggravated battery based on evidence of a plan to beat Ramon would have been an amendment of substance that affected Young's substantial rights. See Fajardo v. State, 859 N.E.2d 1201, 1205 (Ind. 2007), superseded by statute on other grounds.

## Conclusion

Concluding it was error, under these circumstances, for the trial court to convict Young of attempted aggravated battery as a lesser included offense of murder, we reverse.

Reversed.

RILEY, J., and BRADFORD, J., concur.