OPINION ON REHEARING



FILED

Dec 11 2017, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marquell M. Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 11, 2017

Court of Appeals Case No.
82A04-1609-CR-2074

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1510-F1-6686

**Najam, Judge.**

[1]     Marquell Jackson and the State each petition for rehearing following our

opinion in *Jackson v. State*, ___ N.E.3d ___, No. 82A04-1609-CR-2074, 2017

WL 4414200 (Ind. Ct. App. Oct. 5, 2017) ("*Jackson I*"). In *Jackson I*, we held, in

relevant part, that the trial court committed fundamental error when it

permitted the State to amend its charging information on an alleged criminal gang enhancement such that the amended charge no longer stated an offense under Indiana law. *Id.* at *4-6. Thus, we "reverse[d] Jackson's enhancement and remand[ed] with instructions that the trial court vacate the enhancement and the sentence imposed on it." *Id.* at *6. We grant the petitions for rehearing, decline to reconsider our opinion in *Jackson I*, and clarify our remand instructions.

## Jackson I

[2] On rehearing, we first address the State's argument that we should reconsider our opinion in *Jackson I* because, according to the State, the amendment to the charge for the criminal gang enhancement was merely "an unintentional typographical or copying error." State's Pet. for Reh'g at 7. The State further contends that the amendment was made at the behest of the trial court and was "not an intentional bait-and-switch or misdirection." *Id.* And the State argues that Jackson's "arguments at trial show he was not confused by the State's typographic mistake but instead attempted to benefit from it."[1] *Id.*

[3] We decline to reconsider *Jackson I*. We ascribe no ill intent to the State in the erroneously worded amendment to the charging information. But, regardless of

---

[1] In its petition, the State also clarifies an ambiguity in the record with respect to the preliminary and final jury instructions. We agree with the State that our references to the four jury instructions in paragraphs 13 and 23 of *Jackson I* refer to preliminary instructions. However, the State disregards that final instruction number one directed the jury to "keep . . . in mind . . . all of the previous instructions," which thus incorporated the four preliminary instructions into the final instructions. Appellant's App. Vol. III at 59. This clarification does not materially affect our opinion in *Jackson I*.

whether the mistake was intentional, the following conclusions remain true as a consequence of the State's amended information:

1. The amended information omitted all references to an essential element of the correct offense, namely, the *mens rea*.
2. The amended information included as an element of the offense that Jackson was "a known member" of a gang, an act that is not within the statute.
3. The State had no discretion to charge the act alleged as if it were a criminal offense.
4. Because the amended charge stated a nonexistent offense, Jackson had no notice at the time of the offense that the act alleged would have been an offense.
5. A conviction for the incorrect and confusing amended charge does not protect Jackson from double jeopardy.
6. Jackson's counsel expressly and substantially relied on the erroneous language of the amended charge in presenting Jackson's defense.
7. Even if the charge were valid as amended, the State presented no evidence, let alone sufficient evidence, to support the offense as charged.

In its petition for rehearing, the State does not suggest that any of those seven conclusions was erroneous. Neither does the State suggest that the authorities on which we relied for each of those conclusions are not applicable here.

Further, with respect to the State's argument that Jackson's counsel used the erroneous language of the amended charge to Jackson's benefit at trial, the State's position seems to be that Jackson's counsel had no right to rely on and contest the amended information as written. The State's argument is directly contrary to our Supreme Court's reasoning and holding in *Young v. State*, on which we relied in *Jackson I*. *See Jackson I*, ___ N.E.3d at ___, 2017 WL

4414200, at *6 (citing *Young v. State*, 30 N.E.3d 719, 726-28 (Ind. 2015)). As the *Young* Court stated with respect to the facts before it:

> The error here . . . placed Defendants in an unworkable Catch-22. When the State specifically relied on shooting as the "means used" to support the murder charge, Defendants relied on it—as they had the right to do—to frame their defense solely in terms of a shooting, to the exclusion of any other means.

30 N.E.3d at 726 (citation omitted). Likewise here, when the State amended the charge for the criminal gang enhancement to allege that Jackson was "a known member" of a gang and omitted the correct statutory language, Jackson relied on it, which he had the right to do, to frame his defense solely in terms of whether he was a known member of a gang and to the exclusion of the correct statutory language.

[5] In its petition for rehearing, the State cites no authority for its contention that the erroneously amended charge can be justified and excused merely because the State's misstatement of the elements in the charging information was unintentional. Indeed, under the State's apparent argument, the authorities we relied on in our holding in *Jackson I*—and the substantial rights those authorities protect—would be readily circumvented whenever the State simply contends on appeal that the erroneously worded charge was an honest mistake. We reject the State's apparent position that the actual language used in a charging information and the consequences that flow from that language are insignificant so long as any mistakes in the drafting of the charge were unintentional, and we decline to reconsider *Jackson I*.

## Remand Instructions

[6] We next turn to our remand instructions with respect to the vacated criminal gang enhancement. Again, in *Jackson I*, we instructed the trial court on remand to "vacate the enhancement and the sentence imposed on it." ___ N.E.3d at ___, 2017 WL 4414200, at *6. In its petition for rehearing, the State contends that we should instruct the trial court on remand that it now has the discretion to resentence Jackson on each of his underlying convictions. Jackson, in turn, contends that we should instruct the court on remand that the sentences imposed on the underlying convictions are not available for reconsideration. On this issue of first impression, we agree with Jackson.

[7] The State's argument on this issue is that a sentence imposed on a criminal gang enhancement is "equivalent" to a sentence imposed on a habitual offender enhancement. State's Pet. for Reh'g at 5. The State is incorrect. The Indiana Code unambiguously describes the two enhancements in fundamentally different ways.

[8] At the time Jackson committed his offenses, Indiana Code Section 35-50-2-8(j) (2015) explained habitual offender enhancements as follows:

> Habitual offender is a status that results in an enhanced sentence. It is not a separate crime *and does not result in a consecutive sentence. The court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed* and specify which felony count is being enhanced. . . .

(Emphasis added.)  In contrast, for criminal gang enhancements Indiana Code Section 35-50-2-15(e) stated that the "sentence imposed" on the enhancement "*shall run consecutively [sic] to the underlying sentence*."  (Emphasis added.)  And—consistent with the statute's direction to have the sentence imposed on the criminal gang enhancement "run consecutively [sic] to the underlying sentence"—there is no provision in Section 35-50-2-15 that attaches the criminal gang enhancement to any of the felonies on which the underlying sentence has been imposed.  *See generally* I.C. § 35-50-2-15.

[9]  Thus, a sentence imposed on a criminal gang enhancement is fundamentally different from a sentence imposed on a habitual offender enhancement in two critical respects.  First, unlike with a habitual offender enhancement, a sentence imposed on a criminal gang enhancement is consecutive to the aggregate, underlying sentence that has been imposed on the convictions.  Second, unlike with a habitual offender enhancement, there is no direction in the statute that a criminal gang enhancement "attach" to any particular conviction.  That is, a sentence imposed on a habitual offender enhancement increases the sentencing range of the felony to which that enhancement is attached.  *See* I.C. § 35-50-2-8(j).  A sentence imposed on a criminal gang enhancement, on the other hand, is an additional term of imprisonment that is consecutive to the aggregate sentence imposed on the convictions and is not connected to any one conviction.  *See* I.C. § 35-50-2-15(e).

[10]  Further, because of their obvious textual differences a criminal gang enhancement may be imposed *together with* a habitual offender enhancement.

Multiple habitual offender enhancements, by contrast, may not be stacked. *See Venters v. State*, 8 N.E.3d 708, 710-12 (Ind. Ct. App. 2014) (discussing *Starks v. State*, 523 N.E.2d 735 (Ind. 1988)). The State's request that this Court hold a criminal gang enhancement is "equivalent" to a habitual offender enhancement would have this Court not only disregard the plain language of the statutes but would also, in so doing, call into doubt the authority to impose a criminal gang enhancement when the underlying sentence includes a habitual offender enhancement.

[11]   In *Coble v. State*, our Supreme Court held that, when a habitual offender enhancement is reversed on appeal, the trial court has no authority on remand to resentence the defendant on offenses that were "not directly affected" by the reversal of the enhancement. 523 N.E.2d 228, 228 (Ind. 1988). Rather, the trial court's original sentencing judgment with respect to those offenses is a "final judgment not subject to change on remand." *Id.* The *Coble* Court further held that, given the relationship between a habitual offender enhancement and the offense to which that enhancement is attached, the trial court does have the authority on remand to resentence the defendant on the attached offense. *Id.* at 229.

[12]   Under the plain language of Indiana Code Section 35-50-2-15(e), our reversal of the criminal gang enhancement in *Jackson I* did not affect Jackson's convictions or the underlying sentence imposed on those convictions. Again, Section 35-50-2-15(e) expressly directs that the criminal gang enhancement be a separate and consecutive sentence to the "underlying sentence" imposed on the

convictions. That is, nothing about the trial court's imposition of the underlying sentence, or the convictions on which the underlying sentence is imposed, required that the trial court consider the criminal gang enhancement. And, unlike the statutory language for habitual offender enhancements, the plain language of the criminal gang enhancement statute does not direct the trial court to "attach" the criminal gang enhancement to any particular conviction to "enhance" the sentence available for such offenses. I.C. § 35-50-2-8(j), -15. Accordingly, the underlying sentence imposed by the trial court on Jackson's convictions is not subject to change on remand.[2] *Coble*, 523 N.E.2d at 228.

[13] Still, the State asserts on rehearing that the trial court may have imposed a lesser underlying sentence on Jackson in light of the mandatory consecutive sentence for the enhancement and, as such, the trial court should have the discretion on remand to reconsider the underlying sentence now that we have vacated that enhancement. In other words, the State asserts that, given the multiplicity of concerns that our trial courts face in crafting a particular sentence, any disruption on appeal of those concerns is cause to completely reopen sentencing. But the State's argument is incompatible with our Supreme Court's holding in *Coble* that the original sentencing judgment with respect to the sentences for offenses "not directly affected" by the vacated enhancement is

---

[2] However, the trial court shall still correct its judgment of conviction and Jackson's sentence with respect to the convictions we found to be contrary to double jeopardy, as explained in Issue Two of *Jackson I*. ___ N.E.3d at ___, 2017 WL 4414200, at *7.

a final judgment not open for reconsideration on remand. 523 N.E.2d at 228. The State's argument is also contrary to Indiana Code Section 35-50-2-15(e), which unambiguously directs a trial court to impose a sentence for a criminal gang enhancement that is separate and consecutive to the underlying sentence. We cannot disregard clear authority of the Indiana Supreme Court or unambiguous statutes of the Indiana General Assembly. *See Jackson v. State*, 50 N.E.3d 767, 775 (Ind. 2016); *Horn v. Hendrickson*, 824 N.E.2d 690, 694-95 (Ind. Ct. App. 2005).

[14] The State also notes on rehearing that, contrary to Indiana Code Section 35-50-2-15, the trial court here did attach the criminal gang enhancement to Jackson's conviction for burglary, as a Level 1 felony. For the reasons explained above, that was erroneous. As a matter of law, the criminal gang enhancement imposes a sentence consecutive to the underlying sentence on the convictions and is not attached to any of those convictions. We direct the trial court on remand to correct its judgment of conviction, sentencing order, abstract of judgment, and any other relevant orders accordingly.

[15] The parties' petitions for rehearing are granted. We decline to reconsider our opinion in *Jackson I*, and we clarify our remand instructions as stated above.

Kirsch, J., and Brown, J., concur.