


FILED

May 01 2024, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Jonathan D. O'Connor,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

May 1, 2024

Court of Appeals Case No.
23A-CR-2233

Appeal from the Henry Circuit Court

The Honorable Kit C. Dean Crane, Judge

Trial Court Cause No.
33C02-1812-F3-17

---

**Opinion by Judge Mathias**
Judges May and Vaidik concur.

**Mathias, Judge.**

[1] Jonathan D. O'Connor appeals his convictions for Level 1 felony attempted murder and Level 3 felony aggravated battery.[1] O'Connor raises the following two issues for our review:

> 1. Whether his two convictions violate Indiana's protections against double jeopardy.
>
> 2. Whether the State presented sufficient evidence to support his conviction for attempted murder.

[2] We affirm O'Connor's conviction for attempted murder, but, following our Supreme Court's recent opinion in *A.W. v. State*, 229 N.E.3d 1060 (Ind. 2024), we reverse his conviction for aggravated battery as contrary to Indiana's protections against double jeopardy. We remand to the trial court with instructions to vacate O'Connor's conviction and sentence for that offense.

## Facts and Procedural History

[3] Alejandra Tellez used to purchase pain pills from Christopher Williams. However, she ceased doing so and cut off communication with Williams around June 2018 because Williams had become romantically interested in Tellez, and she did not share that interest in him.

---

[1] O'Connor does not appeal his convictions for Level 6 felony criminal confinement or Class A misdemeanor theft.

[4] Williams and O'Connor knew each other, and O'Connor also had previously sold pills to Tellez. On June 11, after Tellez had cut off communication with him, Williams used O'Connor's phone to contact her. He told her he had some pills that he could sell her on June 12, and she agreed to meet Williams.

[5] On the morning of June 12, Williams met with O'Connor at O'Connor's apartment. There, the two discussed abducting and raping Tellez. Williams said, "let's go do this," and the two took O'Connor's car to where Williams had arranged to meet with her. Tr. Vol. 2, p. 219. On the way, it became clear to O'Connor that Williams also intended to "murder" Tellez. Tr. Vol. 3, pp. 6-7.

[6] Williams drove O'Connor's vehicle to the arranged location. There, Tellez got into the back seat. She was "surprised" to see that O'Connor also was in the back seat. *Id.* at 69. Williams drove off with Tellez in the vehicle. O'Connor then tied Tellez's hands and feet together with duct tape.

[7] At some point, O'Connor and Williams switched places in the vehicle. O'Connor drove the vehicle from Indianapolis to Henry County. While driving on a back road, he saw Williams strangling Tellez and thought that Williams had killed her. O'Connor then pulled next to a ravine, and Williams threw Tellez down it. Afterwards, O'Connor drove Williams to two different locations, where Williams disposed of Tellez's cell phone and other personal belongings.

[8] Tellez survived the ordeal, and, in the evening hours of July 13, nearby motorists located her after hearing her struggling to yell for help. At a nearby

hospital, she was treated for several injuries, including a brain injury resulting from oxygen deprivation and petechiae, or hemorrhages in the eyes, which are usually caused by strangulation.

[9] Law enforcement officers identified Williams and O'Connor as the likely perpetrators, and O'Connor later made incriminating statements to officers. The State charged O'Connor in relevant part with Level 1 felony attempted murder and Level 3 felony aggravated battery, both of which were under a theory of accomplice liability. According to the charging information, O'Connor had aided Williams in Williams's attempt to murder Tellez by strangulation. The charging information similarly alleged that O'Connor had aided Williams in Williams's commission of aggravated battery when Williams "knowingly or intentionally inflict[ed] injury" on Tellez, which caused impairment to her "eye." Appellant's App. Vol. 2, p. 128.

[10] Tellez testified against O'Connor. The State also had O'Connor's statements to officers admitted into evidence. During closing argument, the State discussed part of the evidence underlying the allegation of attempted murder as follows: "The marks around her neck, the petechiae eye and her eyes, and the anoxic brain injury are all consistent with establishing that Christopher Williams strangled Alejandra to the near point of death." Tr. Vol. 3, pp. 181-82. And, with respect to the aggravated battery allegation, the State described the relevant evidence similarly: "Alejandra's testimony was that she was temporarily blind [after the attack]. . . . And there's no evidence to suggest that

anything other than the strangulation was the cause of her loss of vision." *Id.* at 184.

[11] The jury found O'Connor guilty of Level 1 felony attempted murder and Level 3 felony aggravated battery. The court then entered its judgment of conviction and sentenced O'Connor accordingly. This appeal ensued.

## 1. O'Connor's two convictions are contrary to Indiana's protections against double jeopardy.

[12] On appeal, O'Connor first contends that his convictions for Level 1 felony attempted murder and Level 3 felony aggravated battery are contrary to Indiana's protections against double jeopardy. We review such questions de novo. *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024).

[13] Indiana's protection against substantive double jeopardy prohibits "multiple convictions for the same offense in a single proceeding." *Id.* at 1066. To determine if a substantive double jeopardy violation has occurred, we apply a "three-part test based on statutory sources . . . ." *Id.* The first step is to look to the statutory language of the offenses at issue; if that language "clearly permits multiple punishments," then "there is no violation of substantive double jeopardy." *Id.* (quotation marks omitted). Here, O'Connor and the State agree that the first step is not dispositive, and so we proceed to the second step.

[14] Under the second step, as clarified by our Supreme Court in *A.W.*, we look to the face of the charging information to discern if the factual bases identified for

the charges implicate our statutory definitions of an "included offense." *Id.* In particular, the Indiana Code defines an included offense as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168 (2017). As we have previously recognized, aggravated battery is included in attempted murder where the fact-finder "would necessarily have to find that all of the material elements of aggravated battery" have been met in order to find that the means used to commit the attempted murder were met. *Demby v. State*, 203 N.E.3d 1035, 1045 (Ind. Ct. App. 2021), *trans. denied*.

[15]  Here, the face of the charging information identifies the factual basis of the means used to commit attempted murder as Williams's strangulation of Tellez. Appellant's App. Vol. 2, p. 128. However, the face of the charging information does not identify a factual basis for the aggravated battery allegation. *Id.* Instead, the charging information for that allegation simply tracks the statutory language of the offense. *See* I.C. § 35-42-2-1.5 (2017).

[16] Thus, the charging information here is ambiguous as to whether the aggravated battery charge may have been included in the attempted murder charge. In such circumstances, our Supreme Court made clear in *A.W.* that we "must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation" at this step in the analysis.[2] *A.W.*, 229 N.E.3d at 1069. We therefore conclude that O'Connor has established a presumptive double jeopardy violation, and we turn to step three.

[17] Under step three, the State may rebut the presumptive double jeopardy violation by using the facts presented at trial to demonstrate a "distinction between what would otherwise be two of the 'same' offenses." *Id.* at 1071. However, "if the facts show only a single continuous crime, and one statutory offense is included in the other," the State may not obtain cumulative convictions. *Id.* (quotation marks omitted).

[18] Here, the State cannot demonstrate a distinction between the attempted murder allegation and the aggravated battery allegation based on the facts from the trial. To the contrary, the prosecutor made clear in his closing remarks that the factual basis for the aggravated battery allegation was Williams's strangulation of Tellez, which was also the means used by Williams in his attempt to murder

---

[2] We also recognize that, if the State were to allege one factual basis in its charging information but then attempt to prove that charge using a different factual basis at trial, the State would implicate the defendant's fundamental due process rights under our Supreme Court's analysis in *Young v. State*, 30 N.E.3d 719, 724-28 (Ind. 2015).

her. Accordingly, the facts show only a single continuous crime between the two allegations.

[19] Where a defendant is found guilty of both the greater offense and an included offense, the proper procedure is to vacate the conviction for the included offense and to enter a judgment of conviction and sentence only upon the greater offense. *See, e.g.*, *Demby*, 203 N.E.3d at 1046. We therefore reverse O'Connor's conviction for Level 3 felony aggravated battery and remand to the trial court for it to vacate that conviction and sentence accordingly.

## 2. The State presented sufficient evidence to show that O'Connor committed attempted murder.

[20] O'Connor also argues that the State failed to present sufficient evidence to support his conviction for attempted murder. For sufficiency of the evidence challenges, we consider only probative evidence and reasonable inferences that support the judgment of the trier of fact. *Hall v. State*, 177 N.E.3d 1183, 1191 (Ind. 2021). We will neither reweigh the evidence nor judge witness credibility. *Id.* We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[21] As our Supreme Court has held, to prove attempted murder under a theory of accomplice liability, the State must show that the defendant

> knowingly or intentionally aided, induced, or caused [his confederate] to commit the attempted murder of [the victim]. The accomplice liability statute permits a defendant to be found guilty as an accomplice without the jury finding that the defendant

committed every element of the crime when that defendant "knowingly or intentionally aids, induces, or causes another person to commit an offense." For many crimes, it is sufficient to prove that a defendant either "knowingly" or "intentionally" performed a prohibited act. It is well settled, however, that a conviction for attempted murder requires proof of specific intent to kill. *See Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991).

*Bethel v. State*, 730 N.E.2d 1242, 1245-46 (Ind. 2000) (statutory citation omitted). O'Connor argues only that the State failed to show that he had the requisite intent to support his conviction.

[22] We disagree and conclude that a reasonable fact-finder could have readily found that the State presented sufficient evidence to support O'Connor's conviction for attempted murder. The day prior to the abduction, O'Connor allowed Williams to use his phone to contact Tellez. The following morning, Williams and O'Connor discussed abducting and raping Tellez. O'Connor then went with Williams to execute that plan, and, en route, it became clear to O'Connor that Williams also intended to murder Tellez. O'Connor nonetheless continued with Williams to locate, abduct, and bind Tellez, and O'Connor drove Tellez and Williams to a remote location in another county. O'Connor then watched Williams strangle Tellez and throw her body down a ravine, after which he helped Williams dispose of Tellez's personal property in multiple locations.

The State presented sufficient evidence from which a reasonable fact-finder could conclude that O'Connor acted with the specific intent to kill Tellez. We therefore affirm his conviction for attempted murder.

## Conclusion

For all of the above-stated reasons, we affirm O'Connor's conviction for Level 1 felony attempted murder and we reverse his conviction for Level 3 felony aggravated battery. We remand to the trial court with instructions for it to vacate O'Connor's conviction and sentence for Level 3 felony aggravated battery.

Affirmed in part, reversed in part, and remanded with instructions.

May, J., and Vaidik, J., concur.

ATTORNEY FOR APPELLANT

Lisa Diane Manning
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana