## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 13 2018, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ivan Aragon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 13, 2018

Court of Appeals Case No.
09A04-1712-CR-2824

Appeal from the Cass Circuit Court

The Honorable Leo T. Burns, Judge

Trial Court Cause No.
09C01-1506-F1-1

**Najam, Judge.**

# Statement of the Case

Ivan Aragon appeals his convictions for child molesting, as a Level 4 felony, and criminal confinement, as a Level 5 felony, following a bench trial. Aragon presents several issues for our review, which we consolidate and restate as the following four issues:

1. Whether the trial court erred when it entered judgment of conviction on child molesting, as a Level 4 felony, when he was not charged with that offense and when it is not a lesser included offense of the child molesting charge filed by the State.

2. Whether the trial court abused its discretion and violated Aragon's Sixth Amendment rights when it denied his request to take a deposition of the minor victim without her mother present.

3. Whether the trial court abused its discretion when it admitted into evidence at trial a videotaped statement of the minor victim.

4. Whether the State presented sufficient evidence to support his criminal confinement conviction.

We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

On June 1, 2015, Aragon was living in a home in Logansport with J.A. and her three minor children: M.L., A.L., and E.L. Late in the day, M.L. was playing outside, E.L. was sleeping, and J.A. was in the bathroom taking a shower. Ten-year-old A.L. was watching television in the living room when Aragon

"pulled [A.L.'s] arm and pushed [her]" into his bedroom. Tr. Vol. 2 at 134. Aragon "tried to pull [A.L.'s] pants down," but she "tried to pull [them] back up." *Id.* Aragon also tried to pull his pants down, and he continued trying to remove A.L.'s pants. At some point, J.A. entered the bedroom, and she saw A.L. pulling up her pants and Aragon pulling up his pants and pulling down on his shirt. J.A. asked Aragon and A.L. what was happening. Aragon did not respond, but A.L. told J.A. that Aragon had tried to pull her pants down. J.A. told Aragon to leave, but he refused. Accordingly, J.A. told A.L. to call the police, which she did.

[4] Officers with the Logansport Police Department arrived to investigate, and Officer Daniel Fagan observed that J.A. and A.L. looked "scared." *Id.* at 185. A.L. told Officer Fagan that Aragon had "abus[ed]" her, and Officer Fagan placed him in handcuffs. *Id.* Officer Fagan observed that Aragon's pants' zipper was unzipped.

[5] The State charged Aragon with attempted child molesting, as a Level 1 felony, and criminal confinement, as a Level 5 felony. Defense counsel scheduled the depositions of J.A. and A.L. to take place on January 27, 2016. But when A.L. requested that J.A. be present during A.L.'s deposition, defense counsel objected, and the parties asked the trial court to resolve the matter during a hearing that same day. The State had offered to have J.A. sit behind A.L. during the deposition so that they could not make eye contact with one another, and the State also offered to prohibit communication between J.A. and A.L. during the deposition. But defense counsel argued to the trial court as follows:

Our investigation has revealed or produced some information that bears questioning an examination and the questioning has to do with almost daily isolation of [A.L.] and repeated questioning by [J.A.] about the defendant. There [are] two or three terms that are used in Spanish that need to be defined by both [J.A.] as to what it means and by [A.L.] as to what she believes it means. They may not necessarily be the same. The term is lo, L-O, boy, B-O-Y, a, A, chingar, C-I-N, excuse me, spelling C-H-I-N-G-A-R. The word chingar has various meanings in Spanish, none of which are positive. It could mean "we are going to get him. I'm going to f*** him. I am going to do something bad to him." Those terms coupled with the isolated inquir[i]es by the mother of the child leaves one to question and examine the fear that this child was under and the influence that mother had on the child to carry out what is believed to be the mother's demand that certain things occur. It is for that reason, the fear of the daughter that the defendant wants to depose the daughter without the mother being present. It is the defendant's right to have a complete examination of the issues. These are not collateral issues. This is the issue. This is the heart of the issue. This is what caused the charge to be filed and that is the position of the defendant as to why he wants to do this. And in this instance the defendant believes that his right to a proper . . . examination of the alleged victim trumps whatever parent/child right may exist to be present during a deposition.

Tr. Vol. 2 at 5-6. At the conclusion of the hearing, the court denied Aragon's request to depose A.L. without J.A. present, but the court ordered that J.A. be seated behind A.L. and prohibited from communicating with A.L. in any way during the deposition. In the end, Aragon decided not to depose either J.A. or A.L.

[6] At some point, a police officer conducted a videotaped interview of A.L. And seven days before trial, the State notified defense counsel of its intent to introduce the interview at trial. On the first day of the bench trial, defense counsel indicated that he would object to the admission of the interview because the State did not provide notice of its intent to introduce it into evidence at least ten days before trial, as required by statute. During trial, the trial court admitted the interview into evidence over Aragon's objection.

[7] At the conclusion of trial, at which both J.A. and A.L. testified, the court found that the State had not proven child molesting, as a Level 1 felony, but found him guilty of child molesting, as a Level 4 felony, and criminal confinement, as a Level 5 felony. The court entered judgment of conviction accordingly and sentenced Aragon to an aggregate executed term of six years. This appeal ensued.

## Discussion and Decision

### Issue One: Child Molesting Conviction

[8] Aragon first contends that the trial court erred when it found him guilty of child molesting, as a Level 4 felony, a crime with which he had not been charged and which is not a lesser included offense of the charged offense, attempted child molesting, as a Level 1 felony. The State agrees that this conviction constitutes fundamental error and must be vacated. Indeed, "'it is well-established that due process requires that a defendant be given notice of the crime or crimes with which he is charged so that he can prepare his defense. Absent sufficient notice

that a particular offense is charged, a defendant cannot be convicted of that crime.'" *Thompson v. State*, 761 N.E.2d 467, 470 (Ind. Ct. App. 2002) (quoting *Lewis v. State*, 413 N.E.2d 1069, 1071 (Ind. Ct. App. 1980)). And notice sufficient to satisfy due process extends to inherently or factually included lesser offenses of the charged crime. *See Young v. State*, 30 N.E.3d 719, 728 (Ind. 2015).

[9] The State charged Aragon with attempted child molesting, as a Level 1 felony, which required the State to prove that Aragon, who was over twenty-one years of age, attempted to perform sexual intercourse or other sexual conduct with A.L., who was under the age of fourteen. Ind. Code § 35-42-4-3(a) (2018). The trial court found that the evidence was insufficient to convict on that charge. Instead, *sua sponte*, the court found Aragon guilty of child molesting, as a Level 4 felony, which required proof that Aragon had fondled or touched A.L. with intent to arouse or to satisfy the sexual desires of either A.L. or himself. I.C. § 35-42-4-3(b).

[10] The State acknowledges that it is well settled that Level 4 child molesting is not an inherently included lesser offense of Level 1 felony child molesting. *See Hall v. State*, 634 N.E.2d 837, 841 (Ind. Ct. App. 1994) (holding the two crimes have different elements and neither is established by proof of the same or less than all of the material elements of the other). And where, as here, the information does not include an allegation that the defendant intended to arouse or satisfy anyone's sexual desires, Level 4 child molesting is not a factually included lesser offense of Level 1 felony child molesting. *See Downey v. State*, 726 N.E.2d

794, 799 (Ind. Ct. App. 2000), *trans. denied*. The trial court committed fundamental error when it convicted Aragon of a crime with which he had not been charged, and we reverse that conviction.[1] *See Young*, 30 N.E.3d at 726. Accordingly, we remand to the trial court with instructions to vacate Aragon's child molesting conviction.

### Issue Two: Separation of Witnesses

[11] Aragon contends that the trial court abused its discretion and violated his Sixth Amendment rights to present a defense and to cross-examine witnesses when it denied his request to take A.L.'s deposition without J.A. present. We address each contention in turn.

### *Abuse of Discretion*

[12] In making his argument to the trial court, Aragon made a "separation of witnesses request," but he did not identify any rule of evidence or trial procedure in support of the motion. Tr. Vol. 2 at 11. For the first time on appeal, Aragon asserts that he was entitled to the separation of witnesses being deposed under Indiana Evidence Rule 615, which provides as follows:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

---

[1] Because we reverse Aragon's child molesting conviction, we need not address his contentions that the trial court erred when it denied him his right to make closing argument relevant to Level 4 child molesting and that his convictions violate double jeopardy principles.

(a) a party who is a natural person;
(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; or

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense.

[13] The parties dispute whether Evidence Rule 615 applies to depositions. But we need not decide that issue because, assuming the rule applies here as Aragon suggests, the trial court did not abuse its discretion under that Rule. The purpose of a separation of witnesses order is to prevent the testimony of one witness from influencing that of another. *Smiley v. State*, 649 N.E.2d 697, 699 (Ind. Ct. App. 1995), *trans. denied*. "Because the order's purpose is to prevent later witnesses from hearing the testimony of earlier witnesses, a trial court does not abuse its discretion by allowing the early witnesses to remain in the courtroom after their testimony." 12 Robert Lowell Miller, Jr., Indiana Practice § 615.103 (4th Ed. 2016). Here, the State agreed that J.A. would be deposed first, so her attendance at A.L.'s subsequent deposition would not have violated a separation of witnesses order.

[14] Further, the party seeking review of a violation of Evidence Rule 615 must show harm resulting from the trial court's actions. *Id.* at § 615.104. And Aragon has not demonstrated any prejudice as a result of the court's denial of his separation of witnesses request. As the State correctly points out, Aragon can only speculate that A.L. would have testified differently had he been able to

question her outside of J.A.'s presence.  While Aragon argued to the trial court that certain unidentified people had given him information to support his allegation that A.L. was lying because of pressure from J.A., Aragon never produced any evidence to support his claims.[2]  Mere speculation is insufficient to show prejudice.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Gutierrez*, 866 N.E.2d 747, 750 (Ind. 2007) (affirming trial court's denial of motion for separate trials where moving party only speculated he would be prejudiced by joint trial).

*Sixth Amendment*

[15]     Aragon also contends that the trial court denied him his right to present a defense and his right to cross-examine witnesses under the Sixth Amendment to the United States Constitution.  The right to present a defense includes "the right to offer the testimony of witnesses" and "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."  *Kellems v. State*, 651 N.E.2d 326, 328 (Ind. Ct. App. 1995).  The right to cross-examination is satisfied if the defendant has the opportunity to bring out such matters as a witness' bias, lack of care and

---

[2]  Aragon asserts on the one hand that, "[b]y the time the trial rolled around, A.L. had had two years to collude with her mother," and on the other hand that, at trial, "A.L. could not recall many details about the purported encounter with Aragon."  Appellant's Br. at 36.  It would seem more likely that a coached witness who has colluded with her mother to frame a defendant would not have had the apparent trouble remembering details that A.L. had when she testified at trial.  Moreover, Aragon did not schedule A.L.'s deposition until approximately six months after his arrest, and that gave A.L. and J.A. ample time to get their stories straight if, indeed, they had colluded to frame Aragon.

attentiveness, poor eyesight, or even bad memory. *Jarrell v. State*, 852 N.E.2d 1022, 1027 (Ind. Ct. App. 2006).

[16] Other than his speculation that, had he been able to depose A.L. without J.A. present A.L. would have testified differently, Aragon has not shown that he was denied his right to present evidence in his defense to show that A.L. had lied or that J.A. had improperly influenced A.L. Neither has he shown that he was denied his right to effectively cross-examine A.L. or any other witness regarding A.L.'s alleged fabrication of the incident. Indeed, at trial, Aragon cross-examined A.L. while J.A. was not present in the courtroom. And Aragon does not allege that the trial court prevented him from asking certain questions of A.L. or J.A. or from calling witnesses in his defense. Aragon's Sixth Amendment claims are without merit.

### Issue Three: Videotaped Statement

[17] Aragon next contends that the trial court abused its discretion when it admitted into evidence the videotaped statement A.L. gave to law enforcement after Aragon's arrest. Aragon maintains that the trial court erred when it admitted A.L.'s statement because it did not first make specific findings of fact and conclusions of law and because the State did not timely notify him of its intent to introduce the statement into evidence. We address each contention in turn.

#### Findings of Fact and Conclusions of Law

[18] For the first time on appeal, Aragon argues that the trial court was required to make "specific findings of fact and conclusions of law" in support of its

determination that A.L.'s videotaped statement was admissible under the Protected Person Statute, Indiana Code Section 35-37-4-6. Appellant's Br. at 37. He asserts that, without such findings and conclusions, we must reverse his conviction. However, because Aragon did not object to the admission of the videotaped statement on that ground when the trial court ruled on its admissibility, the issue is waived. *See Coomer v. State*, 575 N.E.2d 683, 685 (Ind. Ct. App. 1991). In any event, because A.L.'s videotaped statement was merely cumulative of her testimony at trial, any error in its admission was harmless. *See Willis v. State*, 776 N.E.2d 965, 967 (Ind. Ct. App. 2002).

*Untimely Notice of Intent to Use at Trial*

[19] Aragon also asserts that, because Indiana Code Section 35-37-4-6(g) required that the State give him at least ten days' notice of its intent to introduce into evidence A.L.'s videotaped statement, "prejudice should be presumed" due to the State's untimely disclosure only seven days before trial. Appellant's Br. at 39. Aragon maintains that he was prejudiced in that he was "denied an adequate opportunity to object to the reliability of the videotaped statement." *Id.* We cannot agree.

[20] Generally, the proper remedy for a discovery violation is a continuance. *Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999). If a continuance would have cured the harm that arose by the discovery violation, failure to request one results in waiver. *Alcantar v. State*, 70 N.E.3d 353, 356 (Ind. Ct. App. 2016). Here, when the parties argued this issue to the trial court, the court mentioned that Aragon could request a continuance, but Aragon did not do so. Rather, Aragon

acknowledged the trial court's discretion in admitting the statement and asked that he be given an opportunity "to put on very brief testimony from some witnesses to address the issue of reliability before the Court decides." Tr. Vol. 2 at 90. The trial court agreed to allow Aragon to challenge the statement's reliability by calling witnesses. Because Aragon did not request a continuance, the issue is waived. *Alcantar*, 70 N.E.3d at 356.

[21] Waiver notwithstanding, the State asserts, and Aragon does not deny, that he had a copy of the videotaped statement for more than two years before trial and that the State had been "pretty up front" about its plan to use the statement at trial for some time.[3] *Id.* at 82. Aragon has not demonstrated that the admission of the videotaped statement was error, let alone reversible error. And, again, because the statement was merely cumulative of A.L.'s trial testimony, any error was harmless.

### Issue Four: Sufficiency of the Evidence—Criminal Confinement

[22] Finally, Aragon contends that the State presented insufficient evidence to support his criminal confinement conviction. In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing the evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will

---

[3] Nothing in the statute indicates that such notice be made in writing.

affirm the judgment unless no reasonable fact-finder could find the defendant guilty. *Id.*

[23] To prove criminal confinement, as a Level 5 felony, the State was required to show that Aragon knowingly or intentionally confined A.L., who was under the age of fourteen and who was not Aragon's child, without her consent. I.C. § 35-42-3-3. "Confine" means to substantially interfere with a person's liberty. I.C. § 35-42-3-1.

[24] Aragon first asks us to consider six factors in our review of the sufficiency of the evidence, namely: the degree to which A.L.'s movement was restricted; the duration of confinement; whether Aragon made repeated efforts to restrict A.L.'s liberty; whether he moved A.L. a significant distance; the amount of force used in the confinement; and whether A.L. experienced pain. But Aragon's argument amounts to a request that we reweigh the evidence, which we will not do. As the State points out, there is no Indiana case law that prescribes application of a six-factor test to determine the sufficiency of evidence to support a criminal confinement conviction.

[25] The State presented evidence that Aragon had forcibly moved A.L. from the living room to his bedroom, against her will, and he had prevented her attempt to leave the bedroom when he tried to pull her pants down. That evidence is sufficient to support his conviction. *See, e.g.*, *McDonald v. State*, 511 N.E.2d 1066, 1068 (Ind. 1987) (holding evidence sufficient to support criminal

confinement conviction where defendant sat on an officer's chest, pinning him to the floor for a "matter of seconds").

[26] Still, Aragon points out that, to be convicted of criminal confinement as a Level 5 felony, as charged, the evidence had to show that A.L. was under the age of fourteen and *was not his child*. He maintains that, because he was J.A.'s boyfriend, bought things for the family, played with A.L., and drove A.L. to school, he "acted in the place of A.L.'s father," which is sufficient to show that A.L. was his child for purposes of the alleged criminal confinement. Appellant's Br. at 44. We reject Aragon's invitation to "interpret th[e] ambiguous language [of the statute] broadly to protect both parents and those acting *in loco parentis*." *Id.* There is nothing ambiguous about the plain meaning of "the confining person's child" as used in the statute, and there is no dispute that Aragon is not A.L.'s father. Accordingly, we hold that the State presented sufficient evidence to support Aragon's criminal confinement conviction.

[27] Affirmed in part, reversed in part, and remanded with instructions.

Crone, J., and Pyle, J., concur.