ATTORNEY FOR APPELLANT
Ruth A. Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

FILED
Nov 05 2015, 1:06 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

49S02-1511-CR-638

LATOYA LEE,

*Appellant,*

v.

STATE OF INDIANA,

*Appellee.*

Appeal from the Marion Superior Court, No. 49G05-1209-MR-62638
The Honorable Grant Hawkins, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1310-CR-867

**November 5, 2015**

**Rush, Chief Justice.**

The State prosecuted three co-defendants on identical charges in the same trial. In a companion case, we reversed the convictions of two of those three co-defendants—Billy Young and Marquise Lee—and remanded to the trial court with instructions to enter judgments of acquittal. Young v. State, 30 N.E.3d 719 (Ind. 2015). We now apply that holding to the third co-defendant—Latoya Lee[1]—whose case is indistinguishable except that she belatedly filed her petition to transfer.

_____

[1] To distinguish the two Lees, we will refer to Latoya Lee by her first name and to Marquise Lee by his first name. We will refer to all other persons by their last names.

The State acknowledges that it has no new arguments in opposition to Latoya's petition to transfer, nor do we find any reason to treat Latoya differently than Young and Marquise. We therefore grant Latoya's petition to transfer and reverse her conviction as well.

**Facts and Procedural History**

Because we discussed the facts and procedural history in detail in the co-defendants' appeal, Young, 30 N.E.2d at 721–23, we will be brief here:

On September 7, 2012, Latoya Lee (accompanied by her sixteen-year-old son Marquise Lee, her twenty-three-year-old cousin Billy Young, and a male with a tattoo on his face) confronted Ramon Gude outside his apartment in retaliation for Gude having struck Latoya in the face during an argument two days earlier. Marquise and Gude began fistfighting until Gude retreated to his apartment, where his girlfriend Tiara Richardson attempted to pull him inside. Before Gude could close the door, all of Latoya's companions rushed in while Latoya remained outside telling Richardson to "get out of the way." Young handed an unloaded handgun to Marquise, who never loaded or pointed it. Then while Young continued the fight, the tattooed man fatally shot Gude—surprising the other three attackers. All four ran away, but Richardson identified both Lees and later identified Young from a photo array, though the tattooed man remained unidentified at trial.

The State charged all three Defendants with murder, based expressly on the shooting, and with conspiracy to commit murder, alleging the murder itself as the overt act in furtherance of the conspiracy. The State brought no other charges, battery or otherwise. All three Defendants waived their right to a jury trial and consented to a joint bench trial.

After a two-day bench trial and after all evidence was presented, the three Defendants moved for involuntary dismissal for failure of proof under Indiana Trial Rule 41(B). The trial court granted the motion and dismissed both charges—finding reasonable doubt about whether the *shooting* was planned, as opposed to simply "tak[ing] some friends and family over there to pound on [Gude]." But without objection from the Defendants, the court then invited arguments on lesser included battery offenses based on a plan to *beat* Gude—and after hearing closing arguments, it returned a verdict of attempted aggravated battery as a lesser included offense of the murder charge, with the fistfight as the "substantial step" necessary for the attempt. It sentenced the Defendants to fifteen years.

Latoya appealed, arguing her conviction rested on insufficient evidence and challenging her sentence on various grounds. Marquise and Young each appealed separately and challenged the sufficiency of the evidence—but Young also argued that attempted aggravated battery was not properly a lesser included offense of murder under the circumstances.

Three panels of the Court of Appeals reached opposite conclusions: Latoya's and Marquise's panels left the convictions and fifteen-year sentences intact, but Young's panel reversed his conviction on grounds that he lacked fair notice of the attempted aggravated battery charge and the error was fundamental. Latoya Lee v. State, No. 49A02-1310-CR-867, 2014 WL 2587313 (Ind. Ct. App. June 10, 2014); Young, 30 N.E.3d at 722. Latoya and Marquise separately petitioned for rehearing, belatedly raising the argument that had prevailed in Young. Latoya Lee v. State, No. 49A02-1310-CR-867, 2014 WL 4291784 (Ind. Ct. App. Aug. 27, 2014). Both petitions were denied, and Latoya did not pursue her appeal further. But the State sought transfer in Young, and Marquise sought transfer in his case—and we granted transfer and issued a single decision reversing both convictions. See 30 N.E.3d 719. We now grant Latoya's belated petition to transfer in a separate order issued together with this opinion.

**Discussion and Decision**

### I. Charging Murder (or Conspiracy to Commit Murder) By Shooting Does Not, Without More, Give Fair Notice of Lesser Included Charges Based on a Beating.

Our analysis of lesser included offenses and fair notice in Young applies with full force here, and we need not repeat it in detail. It is enough to summarize that defendants must have "clear notice of the charge or charges against which the State summons [them] to defend," Wright, 658 N.E.2d 563, 565 (Ind. 1995), in order to know what they do or do not need to defend against. Young, 30 N.E.3d at 723 (quoting Bruce v. State, 230 Ind. 413, 420–21, 104 N.E.2d 129, 132 (1952) and Garcia v. State, 433 N.E.2d 1207, 1209 (Ind. Ct. App. 1982)). Adequate notice "is vital to both sides of a criminal case," and "[d]ue process will brook no confusion on the subject." Id. (quoting Wright, 658 N.E.2d at 565).

In most cases, including Wright, fair notice is not at issue because the defendant is the proponent of the lesser charge. Id. at 723–24 (citing Wright, 658 N.E.2d at 567). In those cases, Wright's inherent- and factual-inclusion tests are dispositive, and they are a vital part of every included offense

3

question. But fair notice is a separate matter <u>Wright</u> does not address. <u>Id.</u> at 724–25. Instead, as we observed in <u>Young</u>, the unusual facts of these cases present the opposite side of <u>Wright</u>'s question: Even though the elements of attempted aggravated battery are inherently included in murder, did charging the defendants only with murder by *shooting* deprive them of "fair notice" to defend also against the lesser charge of attempted aggravated battery by *beating*—a different and unrelated "means used"? <u>Id.</u> at 724. And like <u>Young</u>, we conclude that the complete factual divergence here between the "means used" as alleged in the murder charge (shooting) and the "means used" on which the court found attempted aggravated battery (beating) deprived Latoya of "fair notice" of the charge of which she was eventually convicted and the corresponding right "to limit [her] defense to those matters with which [she] stands accused." <u>Id.</u> at 725 (quoting <u>Garcia</u>, 433 N.E.2d at 1209).

## II. It was Fundamental Error to Convict Defendant, Like Her Co-Defendants, Based on a Critical Operative Fact the State Never Pleaded and in Fact Disclaimed at Trial.

Latoya, like her two co-defendants, acknowledges she made no trial-level objection to considering attempted aggravated battery as a lesser included offense. Under Trial Rule 46, "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him"—but here, as we found in <u>Young</u>, defense counsel missed a perfectly viable opportunity to object to the trial court's considering the "battery lessors." <u>Id.</u> Rule 46, therefore, did not excuse her failure to object.

But as we held in <u>Young</u>, the error here was fundamental because it placed the Defendants in an unworkable Catch-22. <u>Id.</u> at 727–28. When the State specifically relied on shooting as the "means used" to support the murder charge, Latoya and her co-defendants relied on it—as they had the right to do, <u>Garcia</u>, 433 N.E.2d at 1209—and made binding judicial admissions about the beating in order to frame their defense solely in terms of the charged shooting, to the exclusion of any other means:

> Judge, I'll join in on . . . [the] arguments made by my co-counsels . . . There was evidence that Marquise struck Ramon with his fist, but there was no evidence that that went beyond a misdemeanor battery.

Tr. 258. And in response, the State doubled down on its theory that the Defendants specifically did *not* intend a fistfight and instead intended a shooting, based on Gude's lack of injuries besides the fatal gunshot wounds. Tr. 261.

Once the Defendants had detrimentally relied on the State's charged "means used" by admitting their intent to beat Gude, it was too late for the State to reverse course and assert the same

4

"means used" it disclaimed moments earlier. Doing so placed the Defendants in a dilemma from which no objection and no continuance could have freed them—a fair trial on the alternative theory of attempted aggravated battery by beating had become impossible. The error was therefore fundamental and may be reviewed despite the lack of trial-level objection.

Finally, because this included-offense question is a matter of due process, we exercise our discretion here, as in Young, to review that constitutional issue on our own accord, despite appellate waiver by advancing it for the first time on rehearing. 30 N.E.2d at 728 (citing N. Ind. Commuter Transp. Dist. v. Chicago SouthShore & South Bend R.R., 685 N.E.2d 680, 686 (Ind. 1997) and Plank v. Comm. Hosps. of Ind., Inc., 981 N.E.2d 49, 54 (Ind. 2013)). Latoya's case, no less than Marquise's, implicates the "basic principle of justice that like cases should be decided alike," Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005)—and that even more funda-mentally, the *very same* case should be decided the same way as to identically situated participants. Here, Latoya faces opposite results than her son and Young on the very same issue originating from the very same trial. She now stands convicted while the others stand acquitted, despite being identical in every way except their procedural postures. Even more significantly, Latoya stands convicted and Marquise acquitted, despite being identical in every way, *including* their procedural posture on the included-offense issue. To avoid that serious injustice, we therefore choose to address Latoya's case on its merits and reverse her conviction, consistent with our decision in Young.

## Conclusion

Having already exercised our discretion to permit Latoya to file a belated petition to transfer, we see no reason to treat her differently than Young and Marquise, who now stand acquit-ted as a result of our decision in Young. We therefore grant transfer, reverse Latoya's conviction, and remand to the trial court with instructions to enter a judgment of acquittal.

Dickson, Rucker, David, and Massa, JJ., concur.