## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.G.,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

December 21, 2018

Court of Appeals Case No.
18A-JV-1373

Appeal from the Marion Superior Court

The Honorable Gary Chavers,
Judge Pro Tempore

The Honorable Geoffrey Gaither,
Magistrate

Trial Court Cause No.
49D09-1712-JD-1782

**Brown, Judge.**

[1] C.G. appeals the juvenile court's true finding that she committed a delinquent act which would constitute battery as a level 6 felony if committed by an adult. C.G. raises three issues which we revise and restate as:

I. Whether the juvenile court erred in admitting certain evidence;

II. Whether the evidence is sufficient to support the juvenile court's true finding; and

III. Whether the lack of a charge against C.G.'s mother requires reversal.

We affirm.

### Facts and Procedural History

[2] On December 12, 2017, M.F. and his little brother and sister were at Walgreens buying candy when C.G. and her mother entered the store. C.G.'s mother said something, and M.F. texted his mother saying someone was bothering them because "they said something" and "they kept on watching us." Transcript Volume II 7. M.F.'s mother drove to Walgreens and asked "where was the girl" that was picking on M.F. at school. *Id.* M.F.'s mother then asked C.G. what was "going on," and C.G. said "B---- get the f--- out my face for I whop yo a--!" *Id.* at 12. C.G.'s mother walked over and said, "Don't ask my daughter s---." *Id.* at 13.

[3] M.F.'s mother and siblings exited the store, and C.G. and her mother each had a can of pepper spray and sprayed M.F.'s mother and her children. M.F.'s

mother started fighting because she and her children were being pepper sprayed. They fought through the parking lot, a man yelled, "She got a gun!," and C.G. and her mother "hopped" in their vehicle "to take off." *Id.* at 15.

[4] Indianapolis Metropolitan Police Officer Mitch Hubner arrived at the scene after receiving a report about women fighting. As he pulled in, he observed C.G. and her mother attempting to drive out of the parking lot and he waved them in. Officer Hubner's field training officer noticed that C.G.'s mother had a gun on her right hip, removed it from her, and stored it in his vehicle. C.G. and her mother told Officer Hubner that "they were defending their selves by pepper spraying the other family." *Id.* at 20. Officer Hubner and another officer arrested C.G. and her mother for battery.

[5] On December 19, 2017, the State filed a petition alleging C.G. to be a delinquent for committing an act which would constitute battery as a level 6 felony if committed by an adult. Specifically, the State alleged that C.G. "did knowingly or intentionally touch [L.B.], [M.B.], [M.F.], [V.J.] and/or [L.P.[1]] in a rude insolent or angry manner, which resulted in moderate bodily injury, to wit: facial pain, redness and swelling, [and] difficult breathing due to having been sprayed with pepper spray." Appellant's Appendix Volume II at 17.

[6] On April 10, 2018, the court held a hearing. During direct examination, the prosecutor asked M.F.: "Okay so do you remember . . . [C.G.] macing you?

---

[1] L.P. is M.F.'s mother.

Do you remember her specifically doing that?" Transcript Volume II at 9. M.F. answered: "I don't think I don't think it was her." *Id.* The prosecutor asked him: "Do you specifically remember [C.G.] macing you?" *Id.* M.F. answered: "No. I – I know somebody maced me, one of them." *Id.* He also stated: "It was her or her mother." *Id.* During M.F.'s testimony, the State introduced and the court admitted photos of M.F.'s face, pants, and jacket after being sprayed with mace.

[7] M.F.'s mother testified that both C.G. and her mother had a pepper spray can and "[b]ottles of mace came out and that's when they start pepper spraying us and we started fighting." *Id.* at 13. During the direct examination of M.F.'s mother, the State introduced and the court admitted photos of M.F.'s mother and clothing after being sprayed with mace. The State also moved to admit a photo of three cans of pepper spray. C.G.'s counsel objected on the basis that M.F.'s mother "did not gather information to take that photo." *Id.* at 16. The prosecutor stated: "Your Honor [] State's exhibit 8 shows pepper spray cans that [M.F.'s mother] can testify that she saw that day and can identify." *Id.* The court overruled the objection and admitted the photo as State's Exhibit 8. When asked if she recognized what was in State's Exhibit 8, M.F.'s mother answered: "Yes I sent the pepper spray but the one that has the little key rings on it I seen it when they were in her hand wrapped up." *Id.* Officer Hubner testified that C.G. and her mother stated that "they were defending their selves by pepper spraying the other family." *Id.* at 20.

[8] After the State rested, C.G.'s counsel moved for dismissal and argued that M.F.'s mother did not specifically testify that C.G. deployed the pepper spray, and the court denied the motion. C.G.'s mother testified that C.G. was in the ninth grade, suffers from "a lot of mental stuff and meaning um with her not being able to um – ADHD is what they diagnosed her with." *Id.* at 23. She testified that she and C.G. walked in Walgreens, she noticed a boy looking at her "up and down," and the boy said, "She's got a gun we can get a gun and we can shoot it up." *Id.* at 24. She testified that she realized her "stuff was showing from . . . getting out of the truck" and she just politely pulled down her shirt to cover up her gun. *Id.* She stated that M.F.'s mother "kept on provoking and threatening" and said, "I'm tired of your daughter messing with my son" and "He's gone [sic] fight her today!" *Id.* at 26. She testified:

> [M.F.'s mother] gone [sic] make her son fight my daughter and I kept saying ain't nobody gone [sic] touch my daughter. But she was using profanity the B word, B B my daughter, A word, and I was like ain't nobody gone [sic] touch my daughter and I'm going like this I'm still telling her ain't nobody gone [sic] touch my daughter.

> \* \* \* \* \*

> [W]hen we was out there [M.F.'s mother] kept trying to tell her son to run up on my daughter and beat her up and I kept saying he's not touching my daughter. And I'm doing like this so I went and reached in my pocket because I seen it wasn't no reconciling with them and as I kept trying to you know back off they kept coming so I was like okay. And then he went . . . when [M.F.'s mother] told him to run up he did and he pulled his pants up hut – hut hike and that's when I maced them dead in the face. And I

told him before I even maced him though get back I said you bet not do it and he said "I am."

*Id.* at 26-28. She testified that C.G. was "behind [her] the whole time" and "in the video too you see her spreading out running and then [C.G.] ended up coming back trying to help get them off." *Id.* at 28. She testified that when the police arrived she was "already coming" and "was not trying to leave." *Id.* at 29. She also testified that C.G. did not have any pepper spray on her that day. On cross-examination, she testified that there was no contact outside "but they charged us." *Id.* at 30. C.G.'s counsel introduced and the court admitted surveillance video from Walgreens.

[9] On rebuttal and over C.G.'s objection, Officer Hubner testified that a bottle of pepper spray was found in the pocket of C.G.'s jacket. Specifically, the following exchange occurred:

> Q Officer Hubner there was a . . . search done on the vehicle? Correct?
>
> A Yes[.]
>
> Q And well you – you didn't make, who was involved during the search?
>
> A Um it was Officer Hall and Officer Erwin were the two that I am aware that checked the vehicle.
>
> Q And were you aware of what they found?
>
> A Yes[.]
>
> Q Um do you know if any of [C.G.'s] artifacts were searched?

A  I – I believe that her jacket was searched.

[Defense Counsel]:  Um objection Judge.  Um lack of personal knowledge.

[Prosecutor]:  Your Honor um these questions are directed to impeach the mother's um testimony that there was no pepper spray found on [C.G.] at the scene.

THE COURT:  I allow it.

Q  In [C.G.'s] jacket do you know if anything was found?  To your knowledge were you informed?

[Defense Counsel]:  [O]bjection Judge I he has no personal.  He's not he [sic] one that did the search.  So he has no knowledge.

[Prosecutor]:  Your Honor is – is it is for impeachment purposes rule it as not applied so he can testify as to what he learned on that day and hear or seen what come in.

THE COURT:  Well what's the bases of this knowledge?

[Prosecutor]:  The bases of this knowledge that he was –

THE COURT:  Well no you don't know.  You have to ask him.

Q  Officer how did you learn about this?

A  One of my fellow officers told me.  He – he gave me the evidence that was found in the jacket.

[Defense Counsel]:  So then we would object to hearsay Judge.

THE COURT:  Well, if an item was handed to him so over ruled.  Go head [sic].

Q  Officer what um what was that item?

A  It was a bottle of pepper spray.

Q  And where was it found?

A  In her jacket pocket.

[Defense Counsel]:  Again Judge I would object to hearsay and a lack of knowledge.  Certainly he had to have been told as to where it was found.

THE COURT:  Overruled.  Noted.

*Id.* at 35-36.  The court entered a true finding and scheduled a disposition hearing.

On May 15, 2018, the court held a disposition hearing.  The court stated: "I'm going to . . . enter a true finding but I'm not going to order any services and I'm not going to place you on probation.  I am going to close this matter out. [C.G.] you are discharged and free to go." *Id.*

## *Discussion*

### I.

The first issue is whether the juvenile court erred in admitting Officer Hubner's testimony regarding the pepper spray discovered in C.G.'s jacket.  The admission and exclusion of evidence is a matter within the sound discretion of the trial court, and we will review only for an abuse of discretion.  *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002).  An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances."  *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).  "Errors in the admission or exclusion of evidence are to be disregarded as harmless error

unless they affect the substantial rights of a party." *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted).

[12] "Hearsay" is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is not admissible except as provided by law or the rules of evidence. Ind. Evidence Rule 802.

[13] C.G. contends that the juvenile court erred in admitting Officer Hubner's testimony regarding the pepper spray found in C.G.'s jacket because it constitutes hearsay given that he had not searched the pocket and was relaying information provided to him by another police officer. The State argues that "the truth of the matter asserted – which was whether [C.G.'s mother's] testimony that [C.G.] did not have any pepper spray – was the ultimate effect of admitting Officer Hubner's testimony." Appellee's Brief at 9. The State also argues that any error is harmless given that there was substantial independent evidence of guilt.

[14] During the direct examination of M.F.'s mother, the following exchange occurred:

> Q  And do you remember who took out a pepper spray can?
>
> A  Both of them had one.
>
> Q  And do you remember seeing that?
>
> A  Yes.

Transcript Volume II at 14. M.F.'s mother testified: "Bottles of mace came out and that's when they start pepper spraying us and we started fighting." *Id.* at 13. During direct examination, Officer Hubner stated the following without objection:

> [B]oth [C.G.'s mother] and [C.G.] both [s]tated the same thing. Um they said that they were at the store there were children involved, that both the children had fought at school, they were in the store together, mother showed up, and that they were asked to leave the store. They left the store and they were defending their selves by pepper spraying the other family.

*Id.* at 20.

[15] In light of the testimony of M.F.'s mother and Officer Hubner as well as the other evidence, we conclude that any error in admitting Officer Hubner's testimony regarding the pepper spray found in the pocket of C.G.'s jacket was harmless.

## II.

[16] The next issue is whether the evidence is sufficient to support the juvenile court's true finding that C.G. committed a delinquent act which would constitute battery as a level 6 felony if committed by an adult. When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *J.R.T. v. State*, 783 N.E.2d 300, 302 (Ind. Ct. App. 2003), *trans. denied*. Upon review of a juvenile

adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. *Id.* We will neither reweigh the evidence nor judge witness credibility. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

[17] The offense of battery as a level 6 felony is governed by Ind. Code § 35-42-2-1, which at the time of the offense provided that "a person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . . commits battery" and the offense is a level 6 felony if "[t]he offense results in moderate bodily injury to any other person."[2]

[18] C.G. argues that, although the State offered evidence that M.F. and his mother suffered injuries from pepper spray, it did not prove beyond a reasonable doubt that C.G. was the person who used the pepper spray. The State maintains that it presented sufficient evidence and that C.G. is requesting that we reweigh the evidence.

[19] The evidence most favorable to the challenged true finding reveals that M.F.'s mother testified that C.G. told her: "B---- get the f--- out my face for I whop yo a--!" Trial Transcript Volume II at 12. M.F.'s mother testified that both C.G. and her mother had a pepper spray can. She also stated: "Bottles of mace came out and that's when they start pepper spraying us . . . ." *Id.* at 13. Officer

---

[2] Subsequently amended by Pub. L. No. 80-2018, § 3 (eff. July 1, 2018).

Hubner testified that C.G. and her mother said the same thing and that they said "they were defending their selves by pepper spraying the other family." *Id.* at 20.

[20] Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that C.G. committed an act which would constitute battery as a level 6 felony if committed by an adult.

## III.

[21] The next issue is whether the lack of a charge against C.G.'s mother requires reversal. C.G. asserts that a juvenile involved in the same incident as a parent should not be adjudicated delinquent when the State did not pursue charges against the more culpable adult. C.G. cites *Lee v. State*, 43 N.E.3d 1271 (Ind. 2015), in support of her position. She cites Article 1, Sections 1 and 12 of the Indiana Constitution and argues that juveniles are less culpable generally and C.G. in particular was less culpable than her mother.[3]

---

[3] Article 1, Section 1 of the Indiana Constitution provides: "WE DECLARE, That all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness; that all power is inherent in the people; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the people have, at all times, an indefeasible right to alter and reform their government." Article 1, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

The State asserts that C.G. has waived this claim by failing to raise it before the juvenile court and that C.G. cites to no case law holding that, if the State does not charge and convict every accomplice or co-defendant who is a party to a criminal action, that no party can be rightfully convicted on principles of fairness. The State argues that the prosecuting attorney has broad discretion in determining what crimes to prosecute, that the juvenile justice system has a *parens patriae* function, and that *Lee* offers no relief to C.G. because that opinion did not hold that the State's decision not to charge every accomplice invalidates a fellow accomplice's conviction on the grounds of fundamental fairness.

Initially, we note that C.G. did not raise this argument before the juvenile court. In *Love v. State*, the Indiana Supreme Court held:

> Regarding this subject, Professors LaFave and Israel state:
>
>> "Although some authority is to be found that a discriminatory prosecution claim is a 'defense' which is to be raised during the course of the trial and sent to the jury as part of the case just as with, say, a defense of self-defense, this is not a sound procedure. Because the 'question of discriminatory prosecution relates not to the guilt or innocence of [the accused], but rather addresses itself to a constitutional defect in the institution of the prosecution,' the claim 'should be treated as an application to the court for a dismissal or quashing of the prosecution' and thus should be decided by the court. Moreover, 'because a claim of discriminatory prosecution generally rests upon evidence completely extraneous to the specific facts of the charged offense,' the better practice is to require the claim to be raised and resolved in a pretrial

setting." (Citations omitted.) 2 *W. LaFave & J. Israel*, *supra*, § 13.4(a) at 187.

We wholeheartedly ascribe to the above.

468 N.E.2d 519, 521-522 (Ind. 1984), *cert. denied*, 471 U.S. 1104, 105 S. Ct. 2335 (1985). In *Albright v. State*, this Court held:

> The matter [of selective prosecution] should be brought to the attention of the court by written motion which, on its face, reveals a basis for such claim. A hearing must be set outside the presence of the jury at which both the defendant and the prosecuting attorney are given the opportunity to present evidence. The findings of the court, either granting the motion to dismiss or denying said motion, are then properly subject to appellate review.

501 N.E.2d 488, 497 (Ind. Ct. App. 1986), *reh'g denied*. We observed that no motion to dismiss on the basis of selective prosecution was found in the record and that "[t]he procedure for asserting and establishing selective prosecution in a criminal case was not followed by Albright and, therefore, her claim of being unfairly charged is without merit." *Id.*

[24] Even assuming that C.G. did not waive this issue, we cannot say that reversal is warranted.[4] To the extent C.G. cites *Lee*, in that case, the Indiana Supreme

---

[4] C.G. asserts that her mother "was arrested for battery along with C.G., but no charges were filed against her mother." Appellant's Brief at 14 (citing Appellant's Appendix Volume II at 75, 79). Page 75 of Volume II of the Appellant's Appendix contains a pre-dispositional report which states: "Youth's mother, [L.G.], was also arrested as a result of this matter. Her case was not filed by the Prosecutor's Office." Appellant's Appendix Volume II at 75. The pre-dispositional report also states that C.G.'s mother "was checked on

Court observed that the State prosecuted three co-defendants on identical charges in the same trial. 43 N.E.3d at 1272. In a companion case, the Indiana Supreme Court reversed the convictions of two of those three co-defendants and remanded to the trial court with instructions to enter judgments of acquittal. *Id.* (citing *Young v. State*, 30 N.E.3d 719 (Ind. 2015)). The Court applied that holding to the third co-defendant – Latoya Lee – whose case was indistinguishable except that she belatedly filed her petition to transfer. *Id.* The Court exercised its discretion to review the constitutional issue because the included-offense question was a matter of due process. *Id.* at 1275. The Court held that the case "implicates the 'basic principle of justice that like cases should be decided alike,' *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704, 163 L.Ed.2d 547 (2005)—and that even more fundamentally, the *very same* case should be decided the same way as to identically situated participants." *Id.* The Court observed that Lee faced opposite results than her son and Young on the very same issue originating from the very same trial and stood convicted while the others stood acquitted, despite being identical in every way except their procedural postures. *Id.* The Court also observed that Lee stood convicted and another co-defendant stood acquitted, despite being identical in every way, including their procedural posture on the included-offense issue. *Id.* The Court held: "To avoid that serious injustice, we therefore choose to address Latoya's case on its merits and reverse her conviction, consistent with our

Odyssey and pre-Odyssey systems and was found to have a history under gallery number 795196 of one arrest. No charges were filed in this matter." *Id.* at 79.

decision in *Young*." *Id.* The Court in *Lee* did not address a situation in which one individual is charged and another individual involved in the offense was not charged. Accordingly, we find *Lee* distinguishable.

[25] The Indiana Supreme Court has held generally that "[a] prosecutor is vested with broad discretion in the performance of his or her duties" and "[t]he determination as to who shall be prosecuted and who shall not be prosecuted lies within the sole discretion of the prosecuting attorney." *Lamotte v. State*, 495 N.E.2d 729, 733 (Ind. 1986). In *Love*, the Indiana Supreme Court recognized the right to challenge selective prosecution if the prosecution is discriminatory in nature. 468 N.E.2d at 521 and we have held:

> The essential elements of a claim of selective prosecution are: "(1) that other violators similarly situated are generally not prosecuted; (2) that the selection of the claimant was 'intentional or purposeful'; and (3) that the selection was pursuant to an 'arbitrary classification.'" 2 W. LaFave & J. Israel, *Criminal Procedure* § 13.4(a), at 187 (1984). An "arbitrary classification" includes a classification based upon race, religion, sex or other constitutionally suspect distinction that bears no rational relationship with legitimate law enforcement objectives. *See Love v. State* (1984), Ind., 468 N.E.2d 519, 521 ("the defendant has the burden of proving that he was, in fact, the victim of selective prosecution, based upon 'an impermissible classification such as race, religion or sex.'" (quoting 2 W. LaFave & J. Israel, *Criminal Procedure* § 13.4 (1984))), *cert. denied* (1985), 471 U.S. 1104, 105 S. Ct. 2335, 85 L.Ed.2d 851[.]

*Pruitt v. State*, 557 N.E.2d 684, 689 (Ind. Ct. App. 1990) (citation omitted), *reh'g denied*, *trans. denied*. C.G. has not demonstrated that reversal is warranted.

For the foregoing reasons, we affirm the juvenile court's true finding that C.G. committed a delinquent act which would constitute battery as a level 6 felony if committed by an adult.

Affirmed.

Bradford, J., concurs.

Bailey, J., concurs in result.